UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION NO. 22-CR-65 |
| | : | |
| GLEN BOND, | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding.

**I.   Factual Background**

In August 2020, an undercover officer (the "UC") in Washington, D.C, communicated with the Defendant, Glen Bond, on a social media website known to law enforcement to be a platform where individuals involved in the commercial sexual exploitation of women attempt to recruit women and girls to engage in commercial sex for their financial benefit, referenced hereinafter as "Application A". *See* Presentence Investigation Report ("PSR") ¶¶ 12, 13. The UC was posing as a 20-year-old female on Application A. *Id.* at ¶ 15. The UC observed the Defendant's account on Application A, which had numerous pictures of large amounts of cash, pictures of different women at parties and stripper events, and messages that referenced sexual activity and operating a commercial sex enterprise. *Id.* at ¶ 14. In the course of the communication between the UC and the Defendant, the Defendant explained to the UC that "prostitution" in New York is a misdemeanor that usually gets dropped down to a fine, which he would help her with. *Id.* at ¶ 16. The Defendant also stated he would be able to provide a phone for her, and he informed the UC that she would have to download an application to her phone so that he could track her location. *Id.*

As the chat continued, the Defendant discussed how much girls made and how to navigate pimps. *Id.* The Defendant informed the UC that she would be his girl and that they would make a lot of money. The Defendant also told the UC that he would teach her how to follow the rules. *Id.* The Defendant told the UC that he would collect all the money but, that in exchange for the UC working for him, he would take care of her. *Id.* at ¶ 15. The UC agreed to work for the Defendant, and the Defendant arranged to transport her from Washington, D.C. to New York so that she could engage in prostitution for his financial benefit. *Id.* at ¶ 17.

On or about September 3, 2020, the Defendant drove from New Jersey to Washington, D.C., with the intent of transporting the UC from Washington, D.C. to New York for the purpose of engaging in prostitution. *Id.* at ¶ 18. Defendant Bond was arrested upon his arrival at the arranged meeting location in Washington, D.C. *Id.*

On March 4, 2022, the Defendant was charged by Information with Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952(a)(3)(A). *Id.* at ¶ 1. The Defendant pled guilty, pursuant to a Plea Agreement, on April 8, 2022. Sentencing in this matter is set for Sept. 22, 2022. *See* Minute Order, Aug. 25, 2022.

II.     **A Sentence of Time Served, a Three-Year Period of Supervised Release, and a $5,500 Fine Accurately Reflects the 3553(a) Factors**

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1] These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the Defendant;
(2) the need for the sentence imposed –

---

[1] Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court "must calculate and consider the applicable Guidelines range" as its starting point.

>       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       (B) to afford adequate deterrence to criminal conduct;
>       (C) to protect the public from further crimes of the Defendant; and
>       (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
>    (3) the kinds of sentences available;
>    (4) the applicable sentencing guidelines range for the offense;
>    (5) pertinent policy statements issued by the U.S. Sentencing Commission;
>    (6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and
>    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the Court must consider, in addition to the factors listed above, the factors listed in 18 U.S.C. § 3572(a). These factors include:

> (1) the defendant's income, earning capacity, and financial resources;
> (2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
> (3) any pecuniary loss inflicted upon others as a result of the offense;
> (4) whether restitution is ordered or made and the amount of such restitution;
> (5) the need to deprive the defendant of illegally obtained gains from the offense;
> (6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence; [and]
> (7) whether the defendant can pass on to consumers or other persons the expense of the fine….

18 U.S.C. § 3572(a).

A. **The Nature and Circumstances of the Offense**

The nature and the circumstances of the Defendant's conduct are quite serious, because the Defendant's criminal conduct focused on the sexual exploitation of a young woman for his own financial gain. The parties have agreed to a sentence of Time Served in this matter, to be followed by a three-year period of supervised release. In addition, the Government is asking for a fine in this matter, at the low end of the guidelines range. The guidelines call for a fine of $5,500 to $55,000. PSR at ¶ 6. The Government's request for a fine of $5,500 is appropriate because the offense the Defendant committed in this case was motivated by the goal of financial gain.

The crime of interstate and foreign travel or transportation in aid of racketeering enterprises typically involves the intent to profit by engaging in illegal business activity – in this case, prostitution. The Defendant's account on Application A – known to law enforcement as a platform where individuals involved in the commercial sexual exploitation of women attempt to recruit women and girls to engage in commercial sex for their financial benefit – contained numerous pictures of large amounts of cash. In his efforts to recruit her for these illegal purposes, the Defendant told the UC that he would help her make a lot of money. It should be noted that the Defendant told the UC that he would collect all the money but, that in exchange for the UC working for him, he would take care of her. These statements prove that the Defendant intended to be the sole person in this arrangement who would financially benefit, while the young woman engaged in the dangerous work of commercial sex. As such, a fine in the amount of $5,500 is appropriate given the nature and circumstances of this offense.

A fine also fits the circumstances of this offense, which involved a UC rather than an actual victim. As a result, the Defendant will escape the mandatory restitution that would have applied had the twenty-year old woman in this case been a real person. The circumstances of this case do

not make the Defendant any less culpable than if he had recruited a live victim who would have suffered actual losses. The evidence in this case shows that the Defendant was intent on recruiting young women or girls for his commercial sexual exploitation enterprise. His account on Application A portrayed numerous images of different women at parties and stripper events, and the account contained messages that referenced operating a commercial sex enterprise. When contacted by a person that he believed was a 20-year-old woman, he described his illegal enterprise, initiated her recruitment, and within less than a month he traveled from New York to Washington, D.C., with the intention of bringing her to New York and New Jersey to engage in commercial sex for his financial benefit.

While the goal of financial gain was fundamental to the Defendant's motivation, it is also important to consider that meeting that goal through a commercial sex enterprise comes at great expense to the victims. These illegal enterprises typically involve individuals, like the Defendant, targeting young, vulnerable, women for the purpose of sexually exploiting them for their own financial gain. It would be a mistake to view the Defendant's actions as a "victimless crime" because, in this one isolated incident, he was communicating with law enforcement acting in an undercover capacity, instead of a vulnerable young woman.

As detailed above, law enforcement first encountered the Defendant on a social media platform in August of 2020. This social media platform has been around for over fifteen years, claims to have over 300 million members, and is marketed as an easy way to meet and socialize with new people through games and shared interests.[2] This social media platform was specifically targeted by law enforcement because it is known to be a site where individuals, like the Defendant,

---

[2] This explanation is taken from the website associated with this social media platform. The name of this website is being withheld in public filings to protect the integrity of ongoing investigations.

engage in the commercial sexual exploitation of women, post profiles advertising and glamorizing their criminal lifestyles, and seek out women to work for them in the dangerous world of prostitution.

### B. History and Characteristics of the Defendant

This Defendant has a history of involvement with the criminal justice system. While it is now comparatively remote in time, his criminal history demonstrates a pattern of violence that occurred after his youth. *See* PSR, ¶ 44. Over the course of approximately twelve years – between the ages of 28 and 40 – the Defendant was arrested three times for assaultive conduct in New Jersey and Pennsylvania, although he does not have a criminal record for those offenses. *Id.* at ¶¶ 45, 46.

Even though the Defendant's involvement with the criminal justice system was remote in time and did not result in convictions, these repeated contacts with law enforcement involving assaultive conduct should be taken into consideration when considering the types of harms that are likely to have resulted from the Defendant's involvement in recruiting victims for his commercial sex enterprise. As the Defendant's history shows, he does not stand before the Court due to a one-time lapse in judgment nor a simple mistake. Rather, he has engaged in an ongoing course of criminal conduct that exploits women. As such, the government's sentencing request is appropriate given the history and characteristics of the Defendant.

Additionally, the Defendant has a pattern of sexual exploitation of children. He fathered a child with a sixteen-year-old girl when he was twenty years her senior. *Id* at ¶ 53. That relationship is rendered even more disturbing by credible allegations that the girl was a victim of child sex trafficking at the hands of the Defendant and that she would have been at most fifteen years old when he first engaged in sexual relations with her. The FBI conducted interviews with three

separate witnesses with direct knowledge of the Defendant's activities during that period, who all corroborated the allegation of sex trafficking this girl, who became the mother of his child. The three witness accounts also corroborate each other that the Defendant had at least four minor girls living with him during that period, and he was trafficking all four girls for commercial sex. These allegations relate to conduct that occurred well over a decade before the conduct in the instant case and receive some corroboration from the Defendant himself, who stated that when he was approximately 36 years old, he fathered a child with a sixteen-year-old girl. *Id.* According to the three witness interviews, the Defendant caused girls and young women to engage regularly in commercial sex and he retained the income from those transactions. These allegations demonstrate that the Defendant's conduct in the instant case was not a one-time offense and that the Defendant had generated substantial ill-gotten revenue from similar conduct in the past.

Additionally, the Defendant engaged in at least two other sexual relationships with very young women that raise concerns when united with the Defendant's history of sexually exploiting girls. The Defendant stated that when he was approximately 40 years old, he fathered two children by two separate young women, each of whom was approximately 19 years old when she gave birth. *Id.* at ¶¶ 51-53.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the Defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the Defendant's conduct. From the public's standpoint, the sentence should be of

> a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

Given the fact that the Defendant's sole count of conviction is a violation of 18 U.S.C. § 1952(a)(3)(A), a sentence of Time Served, to be followed by three years of supervised release and a fine of $5,500 would provide "just punishment" for the Defendant's offenses, promote respect for the law, and reflect the seriousness of his offenses.

### D. The Need for the Sentence Imposed to Afford Adequate Deterrence

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). As stated in *United States v. Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007).

For the reasons stated above, 18 U.S.C. § 3553(a)(2)(B) dictates that a sentence of Time Served, a term of supervised release, and a fine of $5,500 is appropriate because the Defendant made a calculation, before committing this offense, that he was willing to exploit other individuals for his own financial benefit. Therefore, this sentence, which would include a payment of a financial penalty, serves to deter not only the Defendant, but other like-minded individuals, from making the same calculation in the future. While the Government is not requesting a term of incarceration, a period of supervised release and a fine serve to convey to the Defendant and to the community that these types of crimes are not "victimless" and that he, and other similarly situated offenders, will be held accountable.

**E. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

The Defendant's efforts to recruit and control victims of a commercial sex enterprise created a grave danger to the community. The world of commercial sexual exploitation is extremely dangerous. Studies have shown that women who are engaged in prostitution experience violence ranging from slapping and punching to assaults with deadly weapons and rape. *See* Dalla, R. (2000, November). *Exposing the "pretty woman" myth: A qualitative examination of the lives of female streetwalking prostitutes*. The Journal of Sex Research, 37(4), 344-353 (In a study of prostituted women, 72.1 % reported severe abuse at the hands of pimps, male sexual buyers, or boyfriends. The acts of abuse include being raped, beaten with objects, threatened with weapons, or abandoned in remote locations). An investigation into the mortality rate of women in prostitution revealed that the leading cause of death was homicide and found that actively prostituting women were nearly 18 times more likely to be murdered than women of similar age and race. *See* Potterat, J., Brewer, D., Muth, S., Rothenberg, R., Woodhouse, D., Muth, J. et al. (2004). *Mortality in a long-term open cohort of prostitute women*. American Journal of Epidemiology, 159(8), 778-785. Furthermore, studies have also demonstrated that a high percentage of individuals who are involved in commercial sex work want to stop prostituting, but they feel that they are trapped. *See* Farley, M. and Barkan, H. (1998). *Prostitution, violence against women, and posttraumatic stress disorder*. Women & Health, 27(3), 37-49.

As a result of the criminal actions of the Defendant, residents living in the areas in which commercial sex work is happening often find themselves as witnesses to, and victims of, crime. Various crimes, in addition to prostitution, are committed by the women working in prostitution, the pimps who are exploiting them, and the Johns who are coming into the neighborhoods. When the commercial sex work occurs in hotels, which is common, it leads to complaints by other guests

and harms the business of the hotel itself. This is due to the nature of the activity that is happening, the clientele that is entering and exiting the premises illegally, and the involvement of law enforcement.

Thus, the risk that this Defendant's conduct posed to the public and the need to protect the public from further crimes are significant. The Defendant's descriptions of his commercial sex enterprise coupled with allegations of child sex trafficking he engaged in more than a decade ago, gleaned from three FBI witness interviews, demonstrate that the Defendant has been engaged in commercial sexual exploitation of victims over an extended period. A three-year term of supervised release is necessary to protect the community from the Defendant engaging in such conduct in the future.

### F. The Defendant's Income, Earning Capacity, and Financial Resources

The government trusts and relies on the conclusion reached by the United States Probation Office that "it appears that the Defendant is not able to pay a fine in this case." See PSR, ¶ 75. However, the PSR does not affirmatively find that the Defendant is indigent. The government has recommended a fine of $5,500 in this case – at the low end of the Guidelines range – for the policy and case-specific reasons described above, and because there is every reason to believe that the Defendant will have the ability to pay a fine of this amount in the future. First, while the Defendant may not currently have the apparent ability to pay, the Court can set a payment schedule that would allow the Defendant to pay the fine by the conclusion of the requested three-year period of supervised release. Second, the Defendant is age 51 and has the ability to earn future income through employment. The parties have agreed not to request a period of incarceration that would impact his ability to work. It should be noted that the Defendant has been gainfully employed in the past. See *Id.* at ¶¶ 67-69. While he has reported that he suffers from mental health issues, the

Defendant also reports that his therapy and medication have been helpful, and there is no indication that he cannot find gainful employment See *Id* at ¶¶ 60, 61. The Defendant reports that he currently owns a vehicle with a value of $18,000, and that he is able to make monthly car payments of $503. See *Id.* at ¶ 72. (A $5,500 fine paid by the conclusion of a three-year period of supervised release would constitute an average of only $152.78 per month.)

While the PSR contemplates potential payment of a $5,000 assessment under the Justice for Victims of Trafficking Act (JVTA), see *Id.* at ¶ 96, the Defendant is not actually subject to that payment because his offense of conviction is not covered by the JVTA. See 18 U.S.C. § 3014. For these reasons, the Defendant will have the ability to pay a $5,500 fine according to a schedule determined by the Court.

The Court is not required to accept a defendant's claim of comparative penury when a defendant has not cooperated in fully exploring his financial resources. U.S. v. Sasso, C.A.2 (N.Y.) 1995, 59 F.3d 341, habeas corpus denied 1999 WL 33110, vacated 234 F.3d 1261, opinion issued 234 F.3d 820. In the instant case, the Defendant did not provide any information about whether he filed federal tax returns. See PSR at ¶ 73. The Defendant also did not return signed consent forms that would have allowed the U.S. Probation Office to obtain an automated credit report. *Id.* at ¶ 72. In describing his available financial resources, the Defendant failed to discuss the proceeds from his long-time involvement in the commercial sex industry. In *U.S. v. Artley,* the U.S. Court of Appeals for the Seventh Circuit found that a defendant who pleaded guilty to drug conspiracy failed to show that he could not pay a $50,000 fine, given that the defendant did not address the issue of missing drug proceeds and instead asserted that regardless of his past accumulation of assets, he lacked the ability to pay a fine. U.S. v. Artley, C.A.7 (Wis.) 2007, 489 F.3d 813, cert. denied, 128 S.Ct. 415, 552 U.S. 965, 169 L.Ed.2d 291.

### G. The Burden that the Fine Will Impose upon the Defendant

Given the Defendant's current financial situation as described above, the fine will impose some burden upon the Defendant, which is appropriate given his criminal conduct and the fact that it was motivated by financial gain. Nonetheless, the burden of a fine of $5,500 – at the very low end of the Guidelines range -- will not be overwhelming, because the Defendant has some ability to pay and has every opportunity to find employment. Furthermore, the burden to the Defendant can be minimized by allowing the fine to be paid over the course of the next three years.

### H. Any Pecuniary Loss Inflicted Upon Others as a Result of the Offense

There was no pecuniary loss inflicted on others as a result of the offense, because the person he recruited for his commercial sex enterprise, in this one instance, was a UC rather than a live victim. However, the Defendant intended to deprive the victim of any ill-gotten gains from the commercial sex enterprise. The Defendant told the UC that he would collect all of the money, but in exchange for the UC working for him, he would take care of her. PSR, ¶ 15.

### I. Whether Restitution is Ordered or Made and the Amount of Such Restitution

While the PSR contemplates potential payment of restitution, see *Id.* at ¶¶ 99, 100, the Defendant will not bear the burden of paying restitution in this case because the person he recruited for his commercial sex enterprise, in this one instance, was a UC rather than a live victim. Therefore, payment of a fine is appropriate.

### J. The Need to Deprive the Defendant of Illegally Obtained Gains from the Offense

The Defendant did not illegally obtain any gains from this offense, again because the person he recruited for his commercial sex enterprise was a UC. However, it is reasonable to conclude that the Defendant has illegally obtained gains from his past operation of a commercial sex enterprise. As noted above, he advertised his criminal lifestyle on Application A and further

described the lifestyle in his exchanges with the UC. See PSR at ¶¶ 14-17. The three witnesses interviewed by the FBI corroborated each other's statements that the Defendant had benefitted financially from similar crimes in the past by retaining the proceeds generated by victims of his commercial sex enterprise.

### K. The Expected Costs to the Government of Any Imprisonment, Supervised Release, or Probation Component of the Sentence

While the government is not requesting a term of imprisonment, there are costs associated with the request for a three-year term of supervised release. The requested fine, while at the low end of the Guidelines range, will assist in partially defraying those costs.

### L. Whether the Defendant Can Pass on to Consumers or Other Persons the Expense of the Fine

The Defendant does not have the apparent ability to pass on the expense of the fine to others unless the Defendant resumes his commercial sex enterprise. Accordingly, the component of supervised release is important to ensure that the Defendant does not resume this or any other criminal conduct to pass on the costs of the fine to new victims.

## III. Forfeiture

The Government asks the Court to sign an Order of Forfeiture that will require the defendant to forfeit all property that was intended to be used or was used in the commission of the offenses. As part of the plea agreement, the Defendant agreed to forfeit the electronic devices seized from his possession on or about September 4, 2020, and currently in the custody and control of the FBI. See PSR at ¶ 8. The devices, which include an LG cellular phone with MEID 089552206409578820, were properly seized and were involved in or used in the commission of the offense by the Defendant, in violation of federal law.

## IV.    Conclusion

The Government submits that a sentence of Time Served, followed by a three-year period of supervised release, and a fine of $5,500 is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Dated:  Sept. 13, 2022						Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

 /s/ *Karen E. Stauss*
Karen Stauss, D.C. Bar Number 499725
Special Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Telephone: (202) 815-2358
Email: Karen.Stauss2@usdoj.gov